[Civ. Nos. 26693, 26858. Second Dist., Div. Four. Mar. 17, 1964.]

FRANK SHARP, Plaintiff and Appellant, v. AUTOMO-
BILE CLUB OF SOUTHERN CALIFORNIA et al.,
Defendants and Appellants.

(Two Cases.)

Frank R. Saletri for Plaintiff and Appellant.

Gilbert, Thompson & Kelly and Jean Wunderlich for Defendants and Appellants.

BURKE, P. J.—For some years prior to May 23, 1959, plaintiff, Frank Sharp,[1] had purchased automobile liability insurance from defendant the Automobile Club of Southern California.[2]

On or about May 20, 1959, the renewal of plaintiff's policy came up for discussion between plaintiff and Jerry E. Davis, sales representative of the Automobile Club. Plaintiff's account of the negotiations is that Davis told him that the "medical pay coverage" of the policy, which covered plaintiff and members of his household to the limit of $5,000 for any and all reasonable expenses incurred for medical care and treatment as a result of an automobile accident, applied whether or not there might be other valid and collectible insurance. This representation as to the effect of other insurance was denied by Davis but the conflict must be resolved in favor of plaintiff.

On or about May 23, 1959, plaintiff renewed his policy with the Automobile Club.

Prior to January 1, 1958, it had been the policy of the Automobile Club to pay medical claims to its insureds although full payment had already been made by a prepaid medical plan. On that date this practice was changed on the basis of a decision of the Appellate Department of the Superior Court of Los Angeles County. (*Bertolino* v. *Republic Indemnity Co.*, Civ. A.L.A. 9250.) From the decision in the above case, counsel for the Automobile Club reasoned that an insured who is the beneficiary of a prepaid medical plan, similar to Kaiser-Permanente (involved in *Bertolino*), Blue Cross or California Physicians' Service, does not "incur" medical expenses for injuries arising out of an automobile accident to the extent that such expenses are paid by the agency. Thus, as to such amounts, since the insured under

---

[1]The original plaintiffs in this action were Frank Sharp, his wife, Mae Sharp, and their daughter, Maxine Sharp. However, prior to the submission of the case to the jury, the plaintiffs dismissed the case as to plaintiffs Mae Sharp and Maxine Sharp. Consequently, this appeal is taken solely by Frank Sharp.

[2]The defendants in this action are Automobile Club of Southern California and Interinsurance Exchange of the Automobile Club of Southern California. It appears that the Automobile Club acted as insurance broker in the events hereinafter to be set forth, while Interinsurance Exchange issued the policy of insurance in question and did the adjusting of claims. Inasmuch as the distinction between the two organizations was waived for purpose of trial, we shall treat the actions of both organizations as those of the Automobile Club.

the club policy incurs no liability, the club has no obligation to the insured therefor.

On November 1, 1959, plaintiff's daughter suffered injuries in a traffic accident. As a result, a medical bill of $1,321 was incurred. At the time of the accident plaintiff's daughter was insured for medical expense with California Physicians' Service (C.P.S.). Plaintiff's daughter received a check from C.P.S. which she induced her treating physician to endorse back to her for her personal living expenses, with the understanding that, when the Automobile Club would pay this same bill under her father's policy, she would pay the physician out of the remittance.

For more than a year plaintiff exerted every effort to get the Automobile Club to pay the medical bills as they were presented but its employees procrastinated, repeatedly promised that payment would be forthcoming, but nothing was done. Finally, after doctors and others threatened action against plaintiff, plaintiff filed a claim with the Automobile Club for $1,321, the full amount of plaintiff's medical expense. The club refused to pay more than the difference between the payments made by C.P.S. and the sum just mentioned, which difference amounted to $134.78.

Plaintiff then instituted the present action to recover the full amount of $1,321 together with exemplary damages. Plaintiff's complaint is in three counts. The first and second counts are on the policy. The third count alleges that the Automobile Club represented through its agent (Jerry E. Davis) that the full amount of medical bills would be paid up to the limits stipulated in the policy, even though there was other insurance covering the same medical bills; that this representation was fraudulent because at that time the practice of the Automobile Club was not to pay medical expenses when they had already been paid by other insurers and that there was no intention to fulfill the representation and promise of the agent, which amounts to fraud entitling the plaintiff to punitive damages.

After a jury trial, a verdict was returned in plaintiff's favor for $1,321 for actual damages and $27,000 punitive damages for fraud, oppression and malice in inducing the plaintiff to enter into the contract of insurance. Defendants then moved for a new trial upon the grounds, among others, that excessive damages were awarded and that such were given under the influence of passion and prejudice; and, also upon the insufficiency of the evidence to justify the verdict,

After argument, the court caused to be entered the following minute order: "The court is of the opinion that exemplary damages are allowable in this case. However, the court is of the opinion that the exemplary damages are grossly excessive and must have been the result of passion or prejudice. Accordingly, the motion for a new trial is granted unless on or before March 7, 1962, plaintiff files herein a written consent to the reduction of the award for exemplary damages to the sum of $1500.00, on the ground of the insufficiency of the evidence to justify the verdict for exemplary damages. If such written consent is filed within the time herein provided, the motion for a new trial will be denied automatically." No remission having been filed by plaintiff, the order granting a new trial became effective and the present appeal followed. Pursuant to rule 3(a) of the California Rules of Court, defendants have taken a precautionary cross-appeal from the judgment entered in favor of plaintiff. The conclusion which we reach as to plaintiff's appeal makes it unnecessary to consider the cross-appeal and it is dismissed.

█ The right of a court to grant a new trial unless the recipient of a damage award consents to a reduction is too firmly established to be open to question. *Dorsey* v. *Barba* (1952) 38 Cal.2d 350 [240 P.2d 604] ; see also 53 A.L.R. 783-792; 95 A.L.R. 1166-1168.) █ Secondly, an order granting a new trial on the ground of insufficiency of the evidence will not be disturbed on appeal if there is evidence to support the position of the trial court. (*Bates* v. *Howard* (1894) 105 Cal. 173, 178 [38 P. 715].) This same rule also holds true where the new trial is granted because of excessive damages (*Koyer* v. *McComber* (1938) 12 Cal.2d 175, 182 [82 P.2d 941] ; *Hughes* v. *Hearst Publications, Inc.* (1947) 79 Cal. App.2d 703, 705 [180 P.2d 419]) ; or where the trial court deems the verdict of punitive damages to be excessive (*Griswold* v. *Hollywood Turf Club* (1951) 106 Cal.App.2d 578, 583 [235 P.2d 656]).

█ A review of the evidence discloses that there was evidence to support the action of the trial court both as to exemplary damages being warranted and that the amount of the jury's award was excessive. Whether the amount of $1,500, proposed by the court, was adequate is not before us since plaintiff, acting entirely within his rights, saw fit not to accept this sum.

While the evidence showed that the Automobile Club had denied many claims from other insureds during the period of

time that it operated under its new practice, no other instances were testified to of direct misrepresentations by Automobile Club agents that all such bills would be paid irrespective of the existence of any prepaid medical plans or other insurance. On the other side of the coin, no showing was made of any affirmative action taken by the club to instruct its agents or insureds as to its interpretation of this portion of its insurance policy or of the company's reversal of its former practice to pay all such medical bills irrespective of the effect of prepaid medical contracts.

The Automobile Club makes a point that, although defendants originally denied liability, they did offer to pay the medical bill in full within a few days after suit was filed. By then, however, plaintiff had undoubtedly incurred additional expense by way of attorney's fees and court costs. He was justified, after a year of delay and procrastination, to reject the offer and insist upon exemplary damages in addition to payment of the medical bills. A substantial award of exemplary damages was warranted although not in the amount awarded by the jury. The order granting a new trial was not an abuse of the judge's discretion.

The form of the order granting a new trial is not clear. While purporting to be based solely on the insufficiency of the evidence to support the *amount* of the exemplary damages awarded, the new trial is not expressly restricted to that issue. However, the issue of whether or not a fraud was practiced upon plaintiff by defendants in inducing him to enter into the contract has been resolved in plaintiff's favor. Substantial evidence supports such a finding. Furthermore, the trial court concurred in the jury's finding; therefore, that issue need not be retried by a second jury.

The jury likewise determined the issue of whether defendants' fraud entitled plaintiff to exemplary damages. The trial judge also concurred in this finding and, although he found the amount of such award to have been excessive, he evidenced his belief that exemplary damages were, in fact, warranted by so stating in his order and providing that if plaintiff would file his written consent to a reduction of the award to the sum of $1,500, the motion for a new trial would be denied. Therefore, as in *Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 802 [197 P.2d 713], there is no reason for having a second jury determine issues heretofore determined in the first trial.

On petition for rehearing, defendants assert that it is not

proper to try the issue of amount of punitive damages separate and apart from the facts which are claimed to justify it, and that to separate the two will amount to the denial of a fair trial. They point out that in *Brewer* v. *Second Baptist Church, supra,* while the retrial was limited to punitive damages, it was not limited solely to the amount thereof but as to whether exemplary damages, if any, should be awarded.

In *Brewer* v. *Second Baptist Church, supra,* the trial court had erred in its instruction to the jury that if it should find that the action complained of was done wantonly, then plaintiff would be entitled to recover punitive damages as well as compensatory damages. Since "a plaintiff is never entitled as a matter of right to exemplary damages [citation]" (*Brewer* v. *Second Baptist Church, supra,* at p. 800), the instruction was erroneous. Thus, in *Brewer* v. *Second Baptist Church, supra,* the jury had not been given untrammeled discretion to say whether or not exemplary damages should be awarded necessitating a retrial of the entire issue. Here, the jury was given full discretion, and in the exercise of the power given to appellate courts, the retrial is limited to the issue of the proper amount of such damages.

Defense counsel assert that where the amount of the award of damages is found to be the result of passion or prejudice (as distinguished from merely excessive), the issue of whether any award of exemplary damages should be given should be retried; that the passion or prejudice permeates the jury's consideration of the entire issue.

Here, however, we have the benefit of the trial court's concurrence with the jury that this is a case for exemplary damages and, certainly, there is no suggestion that he was acting under any improper motive.

Finally, defense counsel state no trial time will be saved on retrial since all the evidence of defendants' conduct must be resubmitted. We believe some trial time will be saved. However, nothing said in this decision is intended in any way to restrict the exercise of the discretion of the trial court as to the scope of the evidence that may be introduced as to the proper amount of punitive damages notwithstanding that neither the issues of the fraud itself nor that plaintiff is entitled to such damages are to be relitigated. The order granting a new trial is reversed insofar as it may purport to grant a new trial on any other issue or issues; the cross-

appeal by defendants is dismissed. Each party shall bear his own costs on these appeals.

Jefferson, J., concurred.

Kingsley, J., did not participate in the consideration of this appeal.

A petition for rehearing was denied on April 8, 1964, and the opinion and judgment were modified to read as above.

The petition of the defendants and appellants for a hearing by the Supreme Court was denied May 13, 1964.